Judge Underwood
delivered the opinion of the Court.
In May, 1806, M’Kee, in his lifetime? filed a bill in the Pulaski circuit court, against Brown *472 charging him with fraud in a contract, relative to á tract of land, lying on Cumberland river, and praying for relief. A subposna issued on the 2d day of June, directed to the sheriff of Franklin county, which was executed on the 20th of the same month, returnablé to the July term of said court.
Steps taken on the rale docket: bill taken for confessed.
Motion to set asif fiitbh-rule anwef*, By Brown,’reídsed- .
Interlocutory decree60^1
Writ of error.
Grounds far quashing writ Of error.
A writ of error, which correctly describes the nature of the action, the parties, the court in which the Writ was pending, and wbiclTdecree or judgment was certain^lUB not necessary that it should bes0“>nHtely preclude the possibility of cortMike16* that required t0 be brought up'
*472 At the July rules (for at that period the laws regulating proceedings upon the rule docket, were in full force,) the complainant, by his counsel, gave a rule for answer. At the August rules, the cause was continued Until the next rule day for answer. At the September rules; thd bill was taken pro confeso.
At the October term of the court, Brown, by his counsel, moved to set aside the rules taken in the clerh*s office, and for leave to file his answer, which was refused by the court, and to this he excepted. At the same term, the cause was taken up for trial, and argued by counsel on both sides.
The court took time, and at the April térnh, 1Í307, entered an interlocutory decree. The cause was continued under the interlocutory decree, in order to execute a writ of inquiry, directed by it, until the July term, 1812, when the inquiry was had, and final decree rendered.
To reverse this decree, Brown sued out a writ of error, on the 27th May, 1814, returnable to the 50th day of the then sitting April court.
It is now moved to quash the writ of error) 1st. Because it does not identify the record and case to be brought up to this court. 2d. Because it is returnable to a day previous to its date. And, 3d. Because it is wholly void on its face*
The writ of error describes the record and proceedings, which 4the clerk of the' Pulaski circuit court is commanded to send up, as “a certain action in chancery, between Samuel M’Kee} Complainant, and John Brown, defendant, pending before the judges of said court, and in which a decree was pronounced at the July term, 1812, to the damage of the Said John Brown.” The record brought up, corresponds with this description, as to the nature of the action, the *473 parties tb it; the court in which it was decided, and the temn when the decree was rendered. I am of opinion that more need hot be done, by way of description in a writ of error. If there are two suits between the same parties, which eqüaÜy suit the description given in the writ, the defendants in error can easily learn when the record is filed, in this court, which is intended to bfe revised. They are brought before this court by summons, and when in court, they Should not be permitted to evade a trial, upon the merits of a cause, upon the ground, merely, that such description was not given m the writ oí error, (which is not served on them,) as would identify the record, brought up in such manner, so that the idea should be excluded, that there could be any other record like it. Indeedfsuch a description might be impossible. Good sense does not require it. There is no variance between the writ of error and the record. They correspond as far as the writ goes, and I think it goes far enough.
In ascertainJjJfréturn^ day 0f a wr¡t is anterior to cfifde^ none but juridical f,ays arecalou 8 e *
This court commenced its April term, 1814, on the 4th day of the month. The writ of error is returnable to the 50fh day of the court. In making the calculation, to ascertain whether the 50th day of the court, came before or after the 27th of May, the date Of the writ, Sundays are to be excluded. No other than juridical days are to be taken into the computation; for if we were to include Sunday, and count, it for any purpose, as a day in court, we should not reject it on any occasion, for the sake of consistency; and thus Sunday, in our circuit courts, would, when they set more than one week, be the seventh day of the term; A notice to appear on the seventh day, if literally Complied with, would, therefore, require the party to attend on Sunday, at the Court house, which wbuld be absurd, as he would then find no court in session. To avoid things so ridiculous, 'when reduced to practice; we enumerate days in court, beginning with the commencement of the term, and going on regularly to its fend, taking no account of Sundajg. By this rule, the 50th day of the court was after the 27th of May, andi the writ of error ought not to be quashed, for the second reason assigned. There is nothing in the third *474 reason. I am, therefore, of opinion, that the motion to fiuash the writ of error, ought not to prevail. It is overruled.
the person of mnstbe'withn in the circuit, To give jurisdiction, either the thing to be acted on or
Process may idle from the which*a" ' is instituted to other counties; but if no judgment against residentdef’t. Son be looai" it is the ex ’ officio duty of the court, to dismiss the sult'
in°M‘K(?e’s°n bill, to give jurisdiction,
Considering the'cause as properly before this court, for adjudication, the first error assigned, which I shall notice, is that which questions the jurisdiction of the Pulaski circuit court. The cases of Dunn and wife vs. M’Millin, 1 Bibb, 409; and Cave vs. Trabue, 2 Bibb, 444, are expositions of the 7th section of the ac^’ Cl'eaf¡ng circuit courts, in regard to their jurisdiction;and trom these, the rule is clearly established, that the thing to be ailected by the judicial proceeding, or which gives locality to the action, must lie within the circuit, or that the person of the defendant, must be within the circuit, in order to give jurisdiction.
■It is true, that process, both at law and in chancery, may issue fr°m the circuit in which the suit is instituted, to other counties; but in these cases, (he action must be local, a proceeding in rem \ or part of the defendants must be in the circuit, where the suit is brought. In the last description of case, it is well set-tied, that if a decree or judgment is not. rendered aga'ns* ibe parties found in the county, or one of them, no judgment or decree can be rendered against (hose defendants, living out of the county. In such case, it *s ^le court’ t° dismiss the action as to the dependents out of the county. See Majors vs. Gunnell, 4 Monroe, 450; Austin’s heirs vs. Bodley, 4 Monroe, 437.
M’Kee’s bill does not allege that the land in relation-w^'c^ ^'aud was practised, lies in Pulaski. It ^oes noi: siaie that the suits brought against him, upon the notes given for the land, were instituted in the Pulaski circuit court, and which suits by the prayer of the bill, the courtis asked to suspend by injunction, which does not appear to have been granted. The bill is not filed to have a conveyance, or any act done in relation to the land. The sole object of the bill is, to compel Brown to refund part of the purchase money paid him, and to surrender the notes for the residue. It is, therefore, clear, that M’Kee’s cause of action was transitory, and that the Pulaski circuit court had no *475 jurisdiction of it,by bringing the defendant before the court, with process, directed to the sheriff of Franklin.
~ ^ñv;ince and defence to the merits, aj]V^ert-° tojunsdietiontbe court subject matter in con-’art'1 ¡^sists^ fie- * cree and is refused peramotion tobe permitted to the'anjument of counsel against a de?ree’ oa,Dn°it such an assent to.the jurisdiction,
It is contended, however, that if it be clear, that the court had no jurisdiction in the first instance; that under the circumstances of this case, Brown cannot now avail himself of it. It appears from the record, that Brozan, by his counsel, made many motions, and gave consent to continuances of the inquiry, directed, from term to term, but in all motions made in his behalf, he was overruled. His first motion was, to get clear of the rules entered against him, by which the bill had been taken for confessed, and, failing, the cause was heard,and at a subsequent term, decreed against him. It is true, that argument was mqde for him, but .what the nature of the argument was, cannot be told, If it had been insisted, that the court should dismiss the bill, for want of jurisdiction, that argument should have prevailed. So far as the record spéaks in the first stages of the cause, Brown was desirous to make defence, by filing an answer, and although it does not appear what would have been the nature of that answer, I cannot presume that it was an acknowledgement of the allegations oí the bill.. If it had been, surely the complainant would not have objected to his filing it, especially, as the court considered the ease of such difficulty, after argument, as to require time for advisement. Every step taken by Brown, indicates, an opposition toa decree against him, and hence no presumption can be indulged in, that he favored and consented to the steps taken by the complainant against him. Besides, if he did so acquiesce, it was a tacit acknowledgement, of the improper conduct charged upon him, in the bill. The case should be clear, before we come to the conclusion, that any man bas consented to his own degradation. I cannot admit, therefore, that Brown has done any act which amounts to a waiver of his right, to object to the jurisdiction of the Pulaski circuit court. I am not prepared to say that.he was bound to put in a plea to the jurisdiction, until the rule taking the bill for confessed, was set aside 't'ae term at which he made the motion to set aside that rule, was the first after the rule was made; and as his motion was overruled, he never did *476 appear to the suit as a defendant, upon the merits, The court would not permit him to appear in that character, and make defence, If the court had permitted him, and he had gone on and defended, upon the merits, I am willing to concede that such a course on his part, might have amounted to a waiver of all objections, to the jurisdiction of the court; inasmuch, as the subject matter of the bill was such, that the court could legally take cognizance of it, in like cases, when proper parties were subject to its jurisdiction. But when the complainant objected to granting Brown permission to defend, by filing his answer, and the court sustained the complainant, I am of opinion, that it would be, unjust, to give to an appearance, entered for the purpose of asking the court for leave to defend an operation, by construction, so as to make Brqwn sanction an ex. parte proceeding against him.
Express con, sent cannot give jurisdiction, the tribunal not having cognizance, by law of the subject matter.
Mandate.
Suggestion.
Mills aDd Brown, for plaintiff; Owsley, for defendant.
Express consent cannot give jurisdiction where the court has not, by law, cqgnizance over the subject matter; where the court has such cognizance, the consent may. Here there is no express consent, and I cannot infer it from any thing apparent upon the record. I am, therefore, of opinion that the Pulaski circuit court should ex officio, have dismissed the bill of the complainant for want of jurisdiction. Having reached this conclusion, it is unnecessary to notice ■any other error assigned, and it would be premature to express any opinion qn the merits of the controversy,
The decree of the circuit court is reversed, with directions to dismiss the bill without prejudice, because that court had no jurisdiction of the case. No decree for costs can be rendered against the present defendants, they being the representatives of M’Kee, and suit-being prosecuted against them in that character only.

The counsel for the plaintiff in error, presented the following written suggestion.

That costs were always recoverable against executors defendants, from a very early date in England, See 2 Bacon Ab. 46, and the reason there given. These decisions possibly apply only to costs below and *477 the question may still arise whether the statutes of Gloucester, &c. included costs on a writ of error.
uss 1
The act of 1796, 1 Digest, 343, says, that in appeals and writs of error, the following rules shall be observed: t‘lf the judgment or decree shall be reversed in the whole, the appellee shall pay to the appellant such costs as the court, in their discretion may award.” It must have been on the construction of this section that our court of appeals have, in such numerous cases de* creéd costs against executors, defendants in error, The only change which our statutes have made, in favor of executors, is that which has been derived from the constructipn given to the act of 1811, which the court have construed to extend to costs also, making them recoverable de bonis testatoris and not de bonis propriis. The above mentioned act of 1796, makes no exception in favor of executors, and is, therefore, applicable to them equally with other defendants in error. The present case is somewhat peculiar. The writ of error) was sued out and pending for twelve or fifteen years, dur-. ing the lifetime of the testator, during all of which period, costs had accrued against the plaintiff in error. It was but recently revived against his executors, and if costs were ever discretionary in such cases, it is con* ceived that they should be awarded in this; at all events, the costs which accrued during the life of the¡ testator.

Upon whicli the judge made the following modification of the mandate and decree.

Upon the suggestion of counsel, I deem it proper to modify the above, so far as to decree costs against the defendant, to be levied de bonis testatoris, for all costs incurred previous to the revival of the suit against the defendants. The clerk will enter a decree accor*.